IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


**PATRICIA LEE FOREMAN,**

    **Plaintiff,**

vs.                                               Case No. 1:12-CV-48-CAS

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

                                    /


## **MEMORANDUM OPINION AND ORDER**

This is a Social Security case referred to the undersigned United States Magistrate Judge upon consent of the parties and reference by Senior District Judge Stephan P. Mickle. Doc. 8. *See* Fed. R. Civ. P. 73; 28 U.S.C. § 636(c). After careful consideration of the entire Record, the Court affirms the decision of the Commissioner.

**I. Procedural History of the Case**

On January 21, 2009, Plaintiff, Patricia Lee Foreman, filed a Title II application for a period of disability and Disability Insurance Benefits (DIB), alleging disability beginning August 2, 2005. R. 18, 156. (Citations to the Record shall be by the symbol "R." followed by a page number that appears in the lower right corner.) Plaintiff's date last insured, or the date by which her disability must have commenced in order to receive benefits under Title II, is December 31, 2010. *Id.* at 18, 20.

In her Disability Report, Plaintiff alleged disability due to fibromyalgia, chronic back pain, depression, acid reflux, inflamed colon, sleep problems, and hypertension. *Id.* at 188.

Plaintiff's application was denied initially on April 22, 2009, and upon reconsideration on October 26, 2009. *Id.* at 18, 86-88, 97-98. On December 16, 2009, Plaintiff requested a hearing. *Id.* at 18, 35-36. On March 30, 2011, Plaintiff appeared and testified at a video hearing conducted by Administrative Law Judge (ALJ) William H. Greer with the ALJ in Jacksonville, Florida, and Plaintiff appearing by video from Ocala, Florida. Paul R. Dolan, an impartial vocational expert, testified during the hearing at the Jacksonville, Florida, location. *Id.* at 18, 36, 65-78, 145-46 (Resume). "Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative." *Id.* at 18, 36-39. Plaintiff was represented by an attorney as of May 27, 2009, through March 22, 2011, when counsel filed a notice advising that he was withdrawing from the case at the request of Plaintiff. *Id.* at 90, 92, 94, 101-05, 108-11, 113, 148-49.

On May 11, 2011, the ALJ issued a Decision and denied Plaintiff's application for benefits filed on January 21, 2009, concluding that Plaintiff was not disabled through December 31, 2010. *Id.* at 29. Plaintiff filed a request for review that was denied by the Appeals Council on January 6, 2012. *Id.* at 1-4, 12. The ALJ's decision stands as the final decision of the Commissioner.

On February 28, 2012, Plaintiff, again represented by counsel, filed a complaint with the United States District Court seeking review of the ALJ's decision. Doc. 1. The parties filed memoranda of law, docs. 14 and 17, and those have been considered.

## II. Findings of the ALJ

In the written Decision, the ALJ made several findings relative to the issues raised in this appeal:

1. Plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2010." R. 20.

2. Plaintiff has not engaged "in substantial gainful activity during the period from her alleged onset date of August 2, 2005 through her last date insured of December 31, 2010." *Id.*

3. Through the date last insured, Plaintiff "had the following severe impairments: chronic low back pain, hyperthyroidism, and hypertension." *Id.* at 20. The ALJ also found that Plaintiff's medically determinable mental impairment of depression "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." *Id.* The ALJ considered four broad functional areas that are known as the "paragraph B" criteria. *Id.* After discussing these four areas, the ALJ concluded that Plaintiff had no more than *mild* limitations in daily living, social functioning, concentration, persistence, or pace, and *no* episodes of decompensation. *Id.* at 20-21.

4. "Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 22. In reaching this conclusion, the ALJ considered several Listings, including Listings 1.02, 1.04, and the listings found under sections 3.00, 4.00, and 5.00. *Id.*

5. Through the date last insured, Plaintiff "had the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the claimant can sit up to 8 hours per day, with the option to get up at least once per hour for 1-2 minutes. The claimant is able to stand and walk up to 4 hours in an 8-hour workday. The claimant is able to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently. The claimant is able to occasionally bend, stoop, and climb stairs. The claimant would be restricted from crawling. The claimant is restricted from climbing ladders, ropes, and scaffolds. The claimant can occasionally reach above shoulder level. The claimant should not work around unprotected heights." *Id.*

6. Through the date last insured, Plaintiff "was capable of performing past relevant work as a Timekeeper, Administrative Clerk, and Bookkeeper. This work did not require the performance of work-related activities precluded by the claimant's [RFC]." *Id.* at 28.

7.  Plaintiff was not under a disability at any time from August 2, 2005, the alleged onset date, through December 31, 2010, the date last insured. *Id.* at 29.

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted). The court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. Moore, 405 F.3d at 1211.[1]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant

---

[1] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002). In addition, an individual is entitled to DIB if he is under a disability prior to the expiration of his insured status. *See* 42 U.S.C. § 423(a)(1)(A) and (d); Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986). 42 U.S.C. § 423(d)(1)(A)

> quite clearly requires that it is the impairment only which must last for a continuous period. Normally, of course, when a claimant has an impairment severe enough to prevent him from working, he will be unable to work for as long as the impairment lasts. This is particularly true when the impairment is physical. The statute, however, does not *require* that a claimant be unable to engage in work during the entire 12 month period. *See also* 20 C.F.R. §§ 404.1505(a); 404.1509; 404.1510. The ability of a claimant to engage in work for limited periods of time certainly calls into question the severity of the impairment, but it does not necessarily determine whether the impairment, however, severe, has lasted for at least 12 months.
>
> While a claimant need only show that an alleged impairment has lasted or can be expected to last for the 12 month period to meet the duration requirement, a

claimant alleging a mental impairment may face a difficulty not presented in cases involving physical impairment. As one court has stated,

> While the mere existence of symptom-free periods may negate a finding of disability when a physical impairment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of the claim. Unlike a physical impairment, it is extremely difficult to predict the course of mental illness. Symptom-free intervals, though sometimes indicative of a remission in the mental disorder, are generally of uncertain duration and marked by an impending possibility of relapse. Realistically, a person with a mental impairment may be unable to engage in competitive employment, as his ability to work may be sporadically interrupted by unforeseeable mental setbacks.

Lebus v. Harris, 526 F.Supp. 56, 61 (N.D. Cal. 1981).

> Because of such considerations, the courts which have considered the question have concluded that a claimant whose claim is based on a mental condition does not have to show a 12 month period of impairment unmarred by any symptom-free interval. . . . We agree with the assessment of these courts. A finding that a claimant has a mental impairment which manifests itself from time to time over a long-term period is not inconsistent with the language of the statute, which requires that an impairment last "for a continuous period of 12 months.". . . . Of course, as required by the regulations, the claimant must present medical evidence which indicates that his mental condition is a long-term problem and not just a temporary setback. . . .

Singletary v. Bowen, 798 F.2d 818, 821-22 (5th Cir. 1986) (citations omitted). *See also*

Lane v. Astrue, No. 1:09CV00159-MP-AK, 2010 U.S. Dist. LEXIS 75846, at *28-30

(N.D. Fla. July 28, 2010) (citing Singletary).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. §§ 404.1520(a)(4)(v), (e) & (g). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV. Legal Analysis

### A. Whether the ALJ Properly Considered Plaintiff's Depression as a Non-Severe Impairment and Whether the ALJ Properly Considered all of Plaintiff's Impairments in Combination

There is no dispute that the ALJ found Plaintiff suffered from depression and this finding is supported by substantial evidence. Id. at 20. Plaintiff argues, however, that the ALJ erred in finding her depression was not a severe impairment. Doc. 14 at 7-10. Plaintiff also argues under her second point that, because the ALJ found her depression

was non-severe, he did not properly consider the combination of her impairments in finding she was not disabled. Doc. 14 at 10-11.

The ALJ determined that Plaintiff had several severe impairments, although depression was not among the severe impairments. The ALJ concluded that Plaintiff's "medically determinable mental impairment of *depression*, does not cause more than minimal limitation in her ability to perform basic mental work activities and is therefore nonsevere." *Id.* at 20 (emphasis added). This conclusion is based on the ALJ's consideration of four broad functional areas known as the "paragraph B" criteria. *Id.* These functional areas include activities of daily living, social functioning, concentration, persistence, or pace, and consideration of episodes of decomposition. *Id.*

At this stage of his analysis, the ALJ relied mainly on the consultative examination performed by William E. Beaty, Ph.D., on September 24, 2009. *Id.* at 21, 346-48. The ALJ also relied, in part, on Dr. Beaty's report when the ALJ made findings regarding Plaintiff's RFC, a separate analysis. *Id.* at 22, 25-26. Plaintiff does not contend that the ALJ overlooked any part of Dr. Beaty's report. Doc. 14 at 7-10. In fact, Plaintiff relies on portions of Dr. Beaty's report (which the ALJ considered) to the exclusion of other medical evidence and other evidence of record. *Id.*

The ALJ summarized Plaintiff's hearing testimony, *id.* at 23, and Plaintiff does not contend that the ALJ overlooked material testimony. *See* Doc. 14 at 7-10.

The ALJ found Plaintiff had severe impairments that "could reasonably be expected to cause the alleged symptoms." The ALJ, however, did not find her "statements concerning the intensity, persistence and limiting effects of these symptoms" to be credible "to the extent they are inconsistent with the" ALJ's RFC

assessment, which is supported by substantial evidence. R. 22-28. The ALJ made several observations and credibility findings in support of these conclusions that are supported by substantial evidence. *Id.*

The ALJ found that Plaintiff's depression caused no more than *mild* limitations in her activities of daily living. *Id.* at 21. During a consultative examination with Dr. Beaty, Plaintiff reported that she performed personal care, fixed breakfast for her husband, and watched television. *Id.* at 21, 347. She reported that she was able to perform chores such as dishes, sweeping, laundry, taxes, and pay bills. *Id.* at 21, 347. Plaintiff testified that she helped at her husband's store by dusting, pricing merchandise, paying bills, and reporting tax information. *Id.* at 21, 47-48, 347. Plaintiff was able to go shopping and complete errands without problems. *Id.* at 21, 347. Plaintiff testified that she did laundry, filled her outdoor water fountains, and listened to Bible tapes. *Id.* at 60-61. She stated that she cooked quick meals. *Id.* at 21, 61. Plaintiff testified that she went grocery shopping two to three times a week and the "biggest thing" she takes in for groceries is a five-pound bag of potatoes. *Id.* at 21, 63-64. In August 2010, Plaintiff was noted to be independent with activities such as driving and self-care. *Id.* at 166.[2] Substantial evidence thus supports the ALJ's finding that Plaintiff's mental impairments caused no more than mild limitations in her activities of daily living.

In the functional area of social functioning, the ALJ found that Plaintiff had no more than *mild* limitations. *Id.* at 21. Plaintiff reported that she went to her husband's business to clean and price merchandise. *Id.* at 21, 346. Plaintiff reported no problems

---

[2] DDS Disability Worksheets note telephone calls with Plaintiff indicating that Plaintiff does not feel she is depressed. *Id.* at 336-37 (Mar. 31, 2009 and Apr. 20, 2009). On July 25, 2009, Eftin Adhami, M.D., M.S., noted, in part, a diagnosis of "mild depression." *Id.* at 25, 344.

Case No. 1:12cv48-CAS

shopping or attending doctor's appointments. *Id.* at 21, 347. Plaintiff testified that she went grocery shopping two to three times a week. *Id.* at 21, 63. She reported that she got along with authority figures "very well." *Id.* at 208. In June 2007, Catherine Edwards, M.D., noted that Plaintiff had no abnormalities in mood, affect, behavior, coping skills, or sleep pattern. *Id.* at 271. In August 2008, Plaintiff was noted to be cooperative and well-groomed; normal posture and gait. Mental status was also normal with a full range of motion in all joints. Also, "depression disorder, single episode, mild degree" is noted. *Id.* at 323, 325-25. Consultative examiner Dr. Beaty characterized Plaintiff as pleasant and responsive with good eye contact. *Id.* at 348. Substantial evidence thus supports the ALJ's finding that Plaintiff had no more than mild limitations in social functioning caused by her mental impairments.

The ALJ found that Plaintiff had no more than *mild* limitations in concentration, persistence, and pace. *Id.* at 21. Dr. Beaty noted that Plaintiff had no impairment in memory and was able to recall three out of three words. *Id.* at 21, 348. Dr. Beaty characterized Plaintiff's thought process as organized and intact. *Id.* at 21, 348. Dr. Beaty noted no impairment in Plaintiff's attention and that she followed directions. *Id.* at 348. Plaintiff reported that she could pay bills, handle a savings account, and use a checkbook. *Id.* at 206. She reported that she followed instructions very well. *Id.* at 208. Substantial evidence thus supports the ALJ's finding that Plaintiff's mental impairments caused no more than mild limitations in concentration, persistence, and pace.

The final functional area is episodes of decompensation. *Id.* at 21. The ALJ found that Plaintiff had experienced no episodes of decompensation. *Id.* The record

contains no evidence of hospitalization for mental problems. The ALJ properly determined that Plaintiff had no episodes of decompensation related to her alleged mental problems.

Because Plaintiff had only *mild* limitations in the first three functional areas and no episodes of decompensation, the ALJ properly found that her alleged mental impairments were not severe. *See* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as "none" or "mild" [activities of daily living; social functioning; concentration, persistence, or pace] and none" in the fourth area [episodes of decompensation] we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521).").

The ALJ also refers to other portions of Dr. Beaty's report, including Plaintiff's score of 21 on the Beck Depression Inventory (BDI)[3] and score of 27 on the Beck Anxiety Inventory (BAI), "indicating a [sic] clinically significant degrees of depression and anxiety." *Id.* at 26, 347. The ALJ also noted Dr. Beaty's assignment of a Global Assessment Functioning (GAF) scale rating of 55. *Id.*[4]

---

[3] The BDI "is a series of questions developed to measure the intensity, severity, and depth of depression in patients with psychiatric diagnoses." Encyclopedia of Mental Disorders, http://www.minddisorders.com/A-Br/Beck-Depression-Inventory.html (last visited Dec. 19, 2012). "The sum of all BDI item scores indicates the severity of depression. The test is scored differently for the general population and for individuals who have been clinically diagnosed with depression. For the general population, a score of 21 or over represents depression. For people who have been clinically diagnosed, scores from 0 to 9 represent minimal depressive symptoms, scores of 10 to 16 indicate mild depression, *scores of 17 to 29 indicate moderate depression*, and scores of 30 to 63 indicate severe depression. The BDI can distinguish between different subtypes of depressive disorders, such as major depression and dysthymia (a less severe form of depression)." *Id.* (emphasis added).

[4] The American Psychiatric Association: *Diagnostic and Statistical Manual of*

The ALJ also discussed patient notes from treating physicians, including but not limited to Dr. Edwards who treated Plaintiff for her thyroid, *id.* at 24, 27, and Rigoberto Puente-Guzman, M.D., who followed Plaintiff for palliative pain management for her history of back and pelvic pain. *Id.* at 24-28. The ALJ noted Dr. Guzman's medical source statement rendered on March 4, 2011,

> indicating that her activity level would be in the range of no repetitive bending, twisting, stooping or squatting with the ability to make position changes as needed. Additional restrictions, included no balancing activities on either lower extremities, avoiding repetitive climbing. She must have the ability to make position changes as needed. Dr. Guzman felt the approximate lifting limitation would [be] 15-20 pounds, and also avoiding activities, which require working in a prolonged flexed or extended manner with the lower back, as well as no prolonged sitting. (Exhibit 11F). Overall, Dr. Guzman reported that the claimant suffered with chronic pain, which had been only treated with palliative care. Additionally, Dr. Guzman indicated the claimant's pain has been maintained (Exhibit 12F).

*Id.* at 26-27, 378-81, 393-94. The ALJ gave "some consideration to Dr. Guzman's medical source statement finding the claimant capable of a reduced range of light work. It should be noted that Dr. Guzman did not find the claimant "disabled," but rather felt the claimant would have some limitations with regard to her work status.

---

*Mental Disorders* (DSM-IV-TR) (4th Ed. Text Revision 2000) states that the GAF Scale is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." *See* DSM-IV-TR 30-32, 34. Neither the Social Security regulations nor case law require an ALJ to determine the extent of an individual's mental impairment based solely on a GAF scale ratings. In fact, the Commissioner has declined to endorse the GAF scale ratings for "use in the Social Security and SSI disability programs," and has indicated that GAF scale ratings have no "direct correlation to the severity requirements of the mental disorders listings." 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000). A GAF scale rating of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV-TR at 34.

According[ly], some weight is given to Dr. Guzman." *Id.* at 28.

The ALJ also considered the August 30, 2009, (not October 26, 2009, as reported by the ALJ) State Agency consultant's physical assessment in which the medical "consultant opined that the claimant would be capable of a reduced range of light work" and the October 26, 2009, State Agency consultant's psychological assessment in which the consultant noted that "the claimant did not suffer from a severe mental impairment, noting that she had no limitation in activities of daily living, no limitation in social functioning, and only mild limitation in concentration, persistence, or pace." *Id.* at 26, 28; *see id.* at 350-62 (Jill Rowan, Ph.D., October 26, 2009 Psychiatric Review Technique); 364-71 (P.S. Krishnamurthy, M.D., August 30, 2009, Physical Residual Functional Capacity Assessment).

Consistent with the medical and other evidence, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with exceptions noted. R. 22, 378. Also, Mr. Dolan's (the vocational expert) testimony supported the ALJ's determination that Plaintiff was not disabled. During the hearing, the ALJ asked Mr. Dolan a hypothetical question that set forth Plaintiff's limitations in a manner consistent with the ALJ's findings concerning Plaintiff's condition and functional limitations, performed at the sedentary level. *Id.* at 70-77. Mr. Dolan testified that Plaintiff could perform her past relevant work as a Timekeeper, Administrative Clerk, and Bookkeeper that were performed at the sedentary level. *Id.* at 28, 71, 77.

During the hearing, Plaintiff asked the ALJ and necessarily the vocational expert to clarify the definition of sedentary. *Id.* at 72-79. In part, Plaintiff suggested that the restriction given to her by Dr. Guzman in a March 4, 2011, letter/report would not allow

her to perform sedentary work. *Id.* at 75-76, 378. The ALJ presented Mr. Dolan with Dr. Guzman's opinion:

> Her activity level would be in the range of no repetitive bending, twisting, stooping or squatting with the ability to make position changes as needed. No balancing activities on either lower extremities. Avoid repetitive climbing. She must have the ability to make position changes as needed. Approximate lifting limitation would be 15–20 pounds. Avoid activities which require working in a prolonged flexed or extended manner with lower back. No prolonged sitting.

*Id.* at 77, 378; *see id.* at 379-81 (Mar. 4, 2011 patient notes). Mr. Dolan opined that within the limitation expressed by Dr. Guzman, he did not see any indication the hypothetical individual would not be able to return to her past relevant work. *Id.* at 77. The ALJ referred to Dr. Guzman's March 4, 2011, "medical source statement," *id.* at 26-27, and, as noted above, gave "some weight" to his opinion. *Id.* at 28.

Ultimately, the ALJ determined, with the assistance of the vocational expert, that Plaintiff was capable of performing her past relevant work "as that work is actually and generally performed" by Plaintiff. *Id.* at 28, 71. The ALJ properly concluded Plaintiff did not have any severe *mental* limitations and the severe impairments found, chronic low back pain, hyperthyroidism, and hypertension, did not prevent Plaintiff from performing her past relevant work with the limitations noted.

## V. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence and the ALJ correctly applied the law. Accordingly, the decision of the Commissioner to deny Plaintiff's application for Social Security benefits is **AFFIRMED.** The Clerk is **DIRECTED** to enter judgment for the Defendant.

**DONE AND ORDERED** at Tallahassee, Florida, on December 21, 2012.

                s/    **Charles A. Stampelos**
                **CHARLES A. STAMPELOS**
                **UNITED STATES MAGISTRATE JUDGE**